## In re ROBERT N. BOYD.

APPEAL FROM THE AUDITOR OF THE TERRITORY.

SUBMITTED DECEMBER 5, 1903. DECIDED DECEMBER 18, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

If the elimination of a portion of an Act as void, would make the
remainder, if allowed to stand, mean something different from
what the Legislature intended by that remainder, the latter cannot
stand.

The provision in Section 52 of the Organic Act that appropriations shall be made biennially, does not prevent the Legislature from dividing the biennial period into two parts, namely, six months before and eighteen months after the inauguration of county government, for the purpose of making different appropriations for each of those parts.

### OPINION OF THE COURT BY FREAR, C.J.

This is an appeal from the decision of the Auditor refusing to issue a warrant or warrants for the payment of the appellant's salary as Deputy Registrar of the Court of Land Registration from July 20 to September 30, 1903, out of the appropriation for "Expenses under Land Registration Act, $22,500.-00," for the eighteen months beginning January 1, 1904.

The legislature of Hawaii, which formerly sat annually, has for more than forty years held its regular sessions biennially, and of course made appropriations for biennial periods. The date of commencement of the fiscal period has been changed from time to time, but for some years prior to 1901 it began on the first of January in the even years, in which the legislature sat. In 1901 the first legislature after the establishment of the Territorial Government in 1900, changed the fiscal period so as to have it begin on the first of July in the odd years, in which the legislature was to hold its regular sessions thereafter.

In 1903, an act was passed providing for the establishment of county governments to begin in January, 1904, and providing for the transfer to the counties of many items of revenue and expense which formerly belonged to the central government. Accordingly, the legislature, in passing the usual appropriation bills for salaries and expenses respectively, divided the biennial period into two parts, namely, the six months prior to the inauguration of county government and the eighteen months thereafter. Thus there are the so-called "six months" salary and expense bills respectively, covering the last half of the year 1903, and the "eighteen months" salary and expense bills respectively, covering 1904 and the first half of 1905.

The same legislature provided for a Court of Land Registration to begin the first of July, 1903. The six months and the eighteen months salary bills provide for the payment of the salaries of the judge, the registrar, civil engineer, two clerks and stenographer of that court, but not for the salary of a deputy registrar. The appellant was appointed to the last named office with the understanding that he would be paid out of the appropriation for the expenses of the court, but, although the eighteen months expense bill provides for such expenses for the eighteen months beginning January 1, 1904, the six months expense bill makes no provision for such expenses for the preceding six months.

The land registration Act seems to assume (Laws of 1903, Act 56, Sec. 7) that there might be a deputy registrar, and provides (Sec. 13) that the salaries of the assistant registrars, examiners of titles and other assistants and messengers (without mentioning the deputy registrar specifically) may be fixed by the Governor, and the Governor has fixed the salary of the deputy registrar at $1500 a year. We will assume that this deputy is properly in office and that his salary may be paid out of an appropriation for expenses of the court, provided there is such an appropriation available.

The appellant's contention is that the legislature could not under the provisions of the Organic Act divide the biennial fiscal period into two parts, that so much of the eighteen months bill (Laws of 1903, p. 422) as purports to limit the appropriation for the expenses of the Land Registration Court to the last eighteen months of the biennial period is void, and that that appropriation therefore became available as soon as the biennial period began.

If the limitation of the Act to the eighteen months period should be held void, it would not follow that the appropriation would be available for the six months period. The appellant's own argument, if sound, might require us to hold the whole Act void, for there would then be no limitation at all—not even to the biennial period for which alone he contends that the appropriation could properly be made. But, however that may

be, and although it is true that one portion of an act may be held void and the remainder allowed to stand, it does not follow that the remainder may stand, if the elimination of the part would make such remainder mean something different from what the Legislature intended. It is one thing to allow a part to remain as the Legislature intended it, and quite another to alter that by making it cover more than was intended. The court cannot legislate. The result is not always the same when an exception or a limitation or a condition is held void as when some other portion is so held. Here the Legislature made the appropriation for one period. The court cannot make it apply to a different period. The result would be, if the argument were sound, that the whole Act would be thrown out and the appellant would be no better off than if it were all allowed to stand. On this point see *Robertson v. Pratt,* 13 Haw. 590, 594; Sutherland Stat. Constr., Secs. 179, 180.

But, in our opinion, the appellant's argument is not sound. The appropriation is made under Section 54 of the Organic Act, which provides for an extra session of the legislature "for the consideration of appropriation bills," in case of a failure to pass appropriation bills for necessary current expenses, etc., at the regular session. Section 52, which relates to appropriation bills of regular sessions, provides, among other things, "that appropriations, except as otherwise herein provided, shall be made biennially by the legislature," and Section 53 provides for submissions by the Governor of estimates for the succeeding "biennial" period. Assuming that Section 54 is subject to whatever restrictions are implied in the word "biennially" used in Section 52, we are of the opinion that the appellant's contention that the Legislature could not limit certain appropriations to one portion, and other appropriations to another portion of the biennial period, cannot be sustained. Just what the full force of the word "biennially" is as used here we need not attempt to say. It is clear that the word was not inserted, for the purpose, as contended, of preventing the Legislature from hampering the Executive by distributing the expenditures through the period. The main object of Sections 52, 53 and 54

is apparent—especially when considered in the light of Sections 1, 2 and 4 of Article 70 of the Constitution of 1894, from which they were adapted, and of the circumstances under which each of these sets of provisions was enacted.   How these provisions should be applied specifically under varying circumstances, we need not say.   But, that the Legislature may properly divide the biennial period as it has divided it in view of the inauguration of county government in that period, seems clear.   Why the Legislature did not provide for the expenses of the Land Registration Court for the first six months does not appear—whether through oversight, or because it thought there would be little or no business in that court during that period, which seems to have been the case, or for some other reason.

The appeal is dismissed.

*Attorney General L. Andrews and P. L. Weaver* for appellant.

*Smith & Lewis and L. J. Warren* for the Auditor.

