TERRITORY OF HAWAII *v.* ERNEST TAM.

No. 2460.

Argued April 8, 1942.        Decided April 20, 1942.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY PETERS, J.

This is a criminal prosecution for the violation of the provision of R. L. H. 1935, § 6283, usually referred to as the "hit-and-run" statute. It is quoted in the margin.[1] R. L. H. 1935, § 6284, as amended by Haw. Laws 1935, ser. C-125, Act 11, § 1, prescribes the penalty for its violation. The original Act of the legislature, of which, as subsequently amended, sections 6283 and 6284 are the consolidation, was enacted at the regular 1913 session.

The indictment against the defendant charges him, as the driver of an automobile which had come into collision on a certain public street in the city of Honolulu with another automobile containing passengers, with failing to stop and with failing to render needed assistance, including the carrying of the passengers of the other automobile to a physician or surgeon for medical or surgical treatment, although said passengers had been injured as a result of the collision and required such treatment, and with failing to give to said passengers the number of his automobile and his name and residence. The defendant was convicted below and prosecuted error, limiting the appeal, however, to a review of the action of the trial court deny-

---

1 "Sec. 6283. Assistance to persons injured by automobiles, etc. Whenever an automobile, motor cycle or other motor vehicle strikes any person, or collides with any vehicle containing a person, the driver of, and all persons in the automobile, motor cycle or other motor vehicle who have or assume authority over the driver, shall immediately cause the automobile, motor cycle or other motor vehicle to stop, and shall forthwith render to the person struck, or to the occupants of the vehicle, all needed assistance, including the carrying of the person or occupant to a physician or surgeon for medical or surgical treatment, if that treatment seems to be required, or if the carrying is requested by the person struck or occupying the vehicle; and the driver, and person having or assuming authority over him, shall forthwith give to the occupant of the vehicle or person struck the number of such automobile, motor cycle or other motor vehicle, with the name and address of the driver, and of each person in the automobile, motor cycle or other motor vehicle at the time of the striking or collision."

ing a plea in abatement and overruling a demurrer to the indictment.

The assignments of error present for consideration the following contentions: 1. That the legislature of the Territory of Hawaii, at its first regular session, after the census enumeration was ascertained, failed and has since failed to reapportion the membership in the senate and house of representatives as required by section 55 of the Hawaiian Organic Act, as originally enacted and as subsequently amended, and hence neither section 6283 and section 6284, as amended by Haw. Laws 1935, ser. C-125, Act 11, § 1, nor the original Acts of the legislature, of which sections 6283 and 6284, R. L. H. 1935, are the consolidation, were enacted by a duly constituted legislature of the Territory of Hawaii; 2. that section 6283 is invalid for the reason that the quoted phrases, "all needed assistance" and "if that treatment [medical and surgical] seems to be required," are vague, indefinite and uncertain and fail to define a standard of guilt, as a result of which section 6283 is a nullity, the prosecution of the defendant is without due process and within the inhibition of article V of the amendments of the Constitution of the United States, and the indictment fails to inform the defendant of the nature and cause of the accusation as required by article VI of said amendments. In our opinion these contentions are without merit.

1. Reapportionment: The section of the Organic Act requiring reapportionment is quoted in the margin.[2]

Those courts that have considered the subject have uni-

---

[2] "The legislature, at its first regular session after the census enumeration shall be ascertained, and from time to time thereafter, shall reapportion the membership in the senate and house of representatives among the senatorial and representative districts on the basis of the population in each of said districts who are citizens of the Territory." Organic Act, § 55.

formly held that an Act of the legislature is not invalid, even though the legislature had failed to effect reapportionment pursuant to constitutional mandate.[3] If this were not so and, in default of apportionment, every law enacted by the legislature after the requirement of reapportionment became effective were invalid, obviously the legislature would be powerless even to pass a reapportionment Act. All of the authorities are agreed that the duty to reapportion, while mandatory, is a continuing one and "if it is not discharged at or within the time prescribed, the burden of its performance rests upon successive" legislatures "until the section has been obeyed." *Fergus* v. *Kinney,* 333 Ill. 437, 164 N. E. 665.

But in our opinion the question is political and not justiciable.[4] The senate and house of representatives of the legislature of Hawaii at its first regular session were admittedly apportioned pursuant to the provisions of the Organic Act. Each successive legislature was similarly constituted. Assuming arguendo that the first regular session after the census enumeration was ascertained, within the meaning of the provisions of section 55 of the Organic Act, was the first regular session of the legislature, and assum-

---

3 *Fergus* v. *Kinney,* 333 Ill. 437, 164 N. E. 665; *People* v. *Thompson,* 155 Ill. 451, 40 N. E. 307; *Fergus* v. *Marks,* 321 Ill. 510, 152 N. E. 557; *Groves* v. *Board of Education,* 367 Ill. 91, 10 N. E. (2d) 403; *People* v. *Blackwell,* 342 Ill. 223, 173 N. E. 750; *In re State Census,* 6 S. D. 540, 62 N. W. 129; *In re State Census,* 9 Colo. 642, 21 Pac. 477; *Opinion of the Judges,* 61 S. D. 107, 246 N. W. 295; *People ex rel. Carter* v. *Rice,* 135 N. Y. 473, 31 N. E. 921; *Matter of Reynolds,* 202 N. Y. 430, 96 N. E. 87; *Rumsey* v. *The People,* 19 N. Y. 41; *District Attorneys,* 12 Colo. 466, 21 Pac. 477; *Williams* v. *Secretary of State,* 145 Mich. 447, 108 N. W. 749; *Botti* v. *McGovern,* 97 N. J. L. 353, 118 Atl. 107; *State ex rel. Meighen* v. *Weatherill,* 125 Minn. 336, 147 N. W. 105; *Leonard* v. *Maxwell,* 216 N. C. 89, 3 S. E. (2d) 316; *People* v. *Clardy,* 334 Ill. 160, 165 N. E. 638; *Hughes* v. *Felton,* 11 Colo. 489, 19 Pac. 444; *Everglades D. League* v. *Napoleon B. Broward D. Dist.,* 253 Fed. 246.

4 *Leonard* v. *Maxwell,* 216 N. C. 89, 3 S. E. (2d) 316; *State ex rel. Cromelien* v. *Boyd,* 36 Neb. 181, 54 N. W. 252; 16 C. J. S. 431, § 145.

ing further that neither at the first regular session nor at any succeeding session any effort was made by the legislature to reapportion the membership of either the senate or house of representatives in accordance with the provisions of section 55 of the Organic Act, the question of the invalidity of the statute involved in the instant case depends, not upon the legality of any affirmative legislative Act effecting or attempting to effect reapportionment, but upon the legal effect of legislative inaction in respect thereto. As far as we know (and nothing to the contrary has been called to our attention) the compilations known as R. L. H. 1935 and Haw. Laws 1935, Act 11, which were passed at the same session of the legislature (1935 session), were duly and regularly enacted by the legislature as then constituted. According to the records of which we may take judicial notice, all of the statutory requisites necessary to their legal enactment, as prescribed by the Organic Act, were meticulously observed. The same may be said of the enactment by the legislature of the Territory of the original Acts of the legislature, of which sections 6283 and 6284, as contained in R. L. H. 1935, are the consolidation. By section 15 of the Organic Act it is provided that each house of the legislature shall be the judge of the elections, returns and qualifications of its own members. This power, coupled with the well-recognized independence of the legislative branch of the government, forbids our interference with legislative expediency. The duty of reapportionment rests upon the legislature and with the expediency of its observance the judiciary has no concern.[5]

2. Validity of the "hit-and-run" statute: The regulation of traffic upon the public highways of the Territory is unquestionably within the police powers of the legislature of the Territory and is a "rightful subject of legisla-

---

[5] See *Coleman* v. *Miller*, 307 U. S. 433; Melville Fuller Weston, "Political Questions," 38 Harv. L. Rev. 296.

tion," as that term is employed in section 55 of the Organic Act. Moreover, the well-known capacity of automobiles, when operated upon the public highways, to inflict serious personal injury and property damage, is sufficient justification for the provisions of section 6283, both as a safety measure and as a condition upon which automobiles, motorcycles or other motor vehicles may use the public highways of the Territory.

The legislature of the Territory undoubtedly is authorized to make the violation of traffic regulations a penal offense, punishable as such. But in doing so, as plaintiff in error correctly points out, the standard of conduct established by the regulation should be sufficiently definite to inform a person of ordinary understanding what is required of him so that he may govern himself accordingly. The general rule of criminal law is that a penal statute should define the offense created with sufficient certainty to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited. This is known as the "standard of guilt." If the standard of guilt established by the statute is unascertainable, obviously the statute is a nullity and cannot support a valid indictment for a violation of its provisions; a prosecution thereunder is without due process and within the inhibition of the fifth article of the amendments of the Constitution of the United States. It is equally obvious that if the criminal statute, for the reasons stated, is a nullity it is superfluous to assert that an indictment framed under the statute also contravenes the sixth article of the amendments of the Constitution of the United States requiring that in all criminal prosecutions the accused should be informed of the nature and cause of the accusation. If the statute is a nullity it cannot support an accusation.

But we deem it unnecessary to decide whether the portions of the statute subject to attack are vulnerable to the

constitutional challenge. If, under the indictment in this case, the defendant could have been convicted of any one or more of the several violations of the statute conjunctively alleged therein, and if, assuming the unconstitutionality of the challenged portions of the statute, after striking out and disregarding the same sufficient of the statute remains which is complete in itself and capable of enforcement in accordance with the apparent legislative intent, including other violations of the statute alleged in the indictment, the standard of guilt of which is not impugned, then anything that we might say in answer to the contentions of unconstitutionality would be mere dicta.

The indictment in the instant case, in addition to alleging that the defendant failed to render needed assistance, including the carrying of the passengers of the other vehicle to a physician or surgeon for medical or surgical treatment, although said passengers had been injured as a result of the collision and required such treatment, alleges that the defendant failed to stop and failed to give to the passengers of the other vehicle the number of his automobile and his name and residence. (The statute requires that, in addition to giving to the passengers of the other motor vehicle the number of his automobile and his name, he also give his "address." Assuming that the words "residence" and "address" are not synonymous, this allegation of the indictment will be disregarded.) The indictment, therefore, in addition to alleging that the defendant failed to render needed assistance, etc., also alleges that he failed to stop and he failed to give to the passengers of the other vehicle the number of his automobile and his name.

In the case of a collision between motor vehicles under the exigencies stated in the statute, the failure to stop immediately constitutes an offense. If the driver, or other persons upon whom the duty to stop is imposed, does so and then drives on without giving to the occupant of the

other vehicle the number of his automobile, he is guilty of an offense. Or, having stopped and given to the occupant of the other vehicle the number of his automobile, he refuses to give his name, he is guilty of an offense. On the other hand, if the driver, or other persons upon whom the duty to stop is imposed, does not stop but drives on, making no attempt to comply with the other requirements of the statute, the whole transaction involves only one offense and calls for the imposition of but a single penalty. Under that state of the statute the rule applies that "When a statute makes two or more distinct acts connected with the same transaction, or of the same general nature, indictable, each one of which may be considered as representing a phase in the same offense, they may be coupled in one count, and under the rules of criminal pleading * * * it is competent for the jury, under this form of indictment, to find the defendant guilty of one or more of such distinct acts, as proofs may warrant." *State* v. *Masters,* 106 W. Va. 46, 144 S. E. 718. Whether, therefore, those portions of the statute to which appellant takes exception are amenable to attack upon the ground of unconstitutionality, becomes immaterial if the indictment alleges other violations of the statute based upon the remaining valid portions of the statute.

Assuming, therefore, but not deciding, that those portions of the statute subject to attack are unconstitutional, the question arises whether, if they were stricken out and disregarded, sufficient of the statute remains which is complete in itself and capable of enforcement in accordance with the apparent legislative intent.

The requirements of the statute may be conveniently referred to as the requirement "to stop" and the requirements to be observed "after stopping."

The first and primary mandate of the statute in the event of the happening of either of the contingencies

named therein is for the driver, and all persons in the automobile, motorcycle or other motor vehicle who have or assume authority over the driver, to immediately cause the automobile, motorcycle or other motor vehicle to stop. This requirement is clear and unequivocal and anyone of ordinary understanding can understand from the language of the mandate what is expected of him and conduct himself accordingly. No claim is made—none could be made—that the standard of guilt in respect to the requirement to stop is unascertainable. Among the many reasons for and purposes of the requirement to stop, not the least are the public interest in traffic violations and the opportunity afforded by stopping for the police to view the *locus in quo* and any vehicle involved and to identify the participants. Nor is the duty to stop immediately after the accident dependent for its observance upon the requirements of the statute after stopping. If anything, the latter requirements assume the observance of the former. Obviously, if the driver, or those having or assuming authority over the driver, fail to stop and continue on their way, failure to observe the requirements of the statute after stopping is a necessary concomitant. The requirements of the statute after stopping are apparently based upon two considerations, humanitarian and material; humanitarian—to insure, irrespective of culpability, first aid to those requiring medical or surgical assistance; material—to identify the principals involved so that culpable civil liability may be enforced. There is no reason to suppose that the legislature would not have imposed the requirement to stop had it been advised that the humanitarian requirements to render first aid did not legalistically establish or define a standard of guilt. From the apparent intention of the legislature this deficiency would have been corrected, assuming that correction were necessary.

What we have said in respect to the requirement to

stop applies equally to the requirements after stopping of giving to the occupants of the vehicle or person struck the number of the automobile, motorcycle or other motor vehicle with the name and address of the driver and of each person in the automobile, motorcycle or other motor vehicle at the time of the striking or collision. No claim is made that any of these requirements are uncertain, vague or indefinite. Each requirement sufficiently establishes a standard of guilt. They are independent of the humanitarian requirements with which they are grouped and there is no reason to believe that the legislature would not have included them in the statute had they doubted the enforceability of the humanitarian requirement upon the grounds alleged. The several requirements of the statute after stopping, exclusive of the humanitarian requirement, are all separate and distinct and each is capable of enforcement in accordance with the apparent intention of the legislature.

Much has been written upon the separability of the provisions of statutes. This court has, upon several occasions, considered the legal effect of partial invalidity of a statute. (See *Boyd* v. *Auditor,* 15 Haw. 361, 364; *Territory* v. *Cunha,* 15 Haw. 607, 609; *Robinson* v. *Baldwin,* 19 Haw. 9, 13; *In re Atcherley,* 19 Haw. 535, 543; *Territory* v. *Hoy Chong,* 21 Haw. 39, 43; *Ter.* v. *Apa,* 28 Haw. 222, 227; *Hawaiian Trust Co.* v. *Smith,* 31 Haw. 196, 202.) Much that was said in *In re Atcherley, supra,* is applicable here, including the citation from Cooley. (Cooley, Constitutional Limitations [7th ed.], pp. 246, 247.)

We therefore conclude that the violation of any of the valid remaining requirements of the statute constitutes a separate and distinct offense, enforceable as such; that section 6283 is sufficient to support an indictment charging the violation of any one or more of the remaining valid requirements of the statute, that is to say, the requirement

42

to stop and the requirements to give to the occupants of the other vehicle the number of the motor vehicle with the name and address of the driver and of each person in the motor vehicle at the time of the striking or collision; and that the allegations of the indictment charging the defendant with failing to stop and with failing to give to the occupants of the other vehicle the number of his automobile or his name, are sufficient against demurrer.

Judgment affirmed.

*O. P. Soares* (also on the briefs) for defendant.

*C. E. Cassidy,* Public Prosecutor (*W. Z. Fairbanks* and *J. P. Russell,* Assistant Public Prosecutors, with him on the briefs), for the Territory.