(No. 17153.—Writ denied.)
JOHN B. FERGUS, Petitioner, *vs.* ADOLPH MARKS *et al.* Respondents.

*Opinion filed June 16, 1926.*

1. MANDAMUS—*what is a writ of mandamus.* The writ of *mandamus* is a summary writ issuing from a court of competent jurisdiction, commanding the officer or body to whom it is addressed to perform some specific duty which relator is entitled, of right, to have performed and which the party owing the duty has failed to perform, and it is issued to compel the performance of a public duty by a public functionary in a case in which the public has a right to complain of the failure to perform the duty.

2. CONSTITUTIONAL LAW—*one department of government can not exercise any control over the other except as specified in constitution.* As the constitution has divided the powers of government into the executive, legislative and judicial departments, no person or collection of persons being one of these departments may exercise any power properly belonging to either of the others, except as expressly directed or permitted by the constitution.

3. SAME—*judicial department cannot compel legislature to re-apportion State.* While the writ of *mandamus* may be issued in certain cases to compel action on the part of a public official, leaving the manner of performing the duty entirely with the officer, the judicial department of the State cannot by *mandamus* compel a co-ordinate department of the government to perform any duty imposed by the constitution; and although the duty of the legislature to re-apportion the State is specified in the constitution, the courts cannot compel the legislature to take action in the premises as it is a specific legislative duty, for failure to perform which the legislature, alone, is responsible to the people.

ORIGINAL petition for *mandamus*.

JOHN A. WATSON, for petitioner.

M. P. RICE, TRUMAN A. SNELL, BEN L. SMITH, THOMAS L. FEKETE, JR., and JESSE L. DECK, for respondents Florence Fifer Bohrer *et al.;* JAMES J. O'TOOLE, RALPH E. CHURCH, ELMER J. SCHNACKENBERG, and DAVID I. SWANSON, for respondents Charles A. Griffen *et al.;* WEST & ECKHART, (ROY O. WEST, of counsel,) for respondent James E. MacMurray; ROBERT H. FARRELL, for respondent Herman J. Haenisch; MAXWELL LANDIS, for respondent Charles E. Marinier.

Mr. JUSTICE HEARD delivered the opinion of the court:

Section 6 of article 4 of the Illinois constitution of 1870 provides: "The General Assembly shall apportion the State every ten years, beginning with the year 1871, by dividing the population of the State, as ascertained by the Federal census, by the number fifty-one, and the quotient shall be the ratio of representation in the senate. The State shall be divided into fifty-one senatorial districts, each of which shall elect one senator, whose term of office shall be four years. The senators elected in the year of our Lord 1872 in districts bearing odd numbers, shall vacate their offices at the end of two years, and those elected in districts bearing even numbers, at the end of four years; and vacan-

cies occurring by the expiration of term, shall be filled by the election of senators for the full term. Senatorial districts shall be formed of contiguous and compact territory, bounded by county lines, and contain, as nearly as practicable, an equal number of inhabitants; but no district shall contain less than four-fifths of the senatorial ratio. Counties containing not less than the ratio and three-fourths, may be divided into separate districts, and shall be entitled to two senators, and to one additional senator for each number of inhabitants equal to the ratio contained by such counties in excess of twice the number of said ratio."

In accordance with this provision the General Assembly in 1901 passed an apportionment act dividing the State into fifty-one senatorial districts, since which time it has failed or neglected to comply with this constitutional provision to pass an apportionment bill, and its members are still elected and function under the act of 1901. The petitioner, by leave of this court, has filed his petition herein asking this court to issue the people's writ of *mandamus* to compel the respondents, who comprise the membership of the General Assembly, to meet and apportion the State in accordance with this constitutional provision. Several of the respondents have filed answers, saying that they have fully performed their constitutional duties imposed upon them with respect to the re-apportionment of the State of Illinois, and that they have, as members of the Fifty-fourth General Assembly, taken all steps possible to urge and bring about obedience to the provisions of the constitution; that they are in accord with the spirit and prayer of the petition and are willing and anxious to proceed further under such proper, lawful and constitutional means as may bring about re-apportionment of the State of Illinois as provided by section 6 of article 4 of the constitution. Other of the respondents have filed their motion to dismiss the petition and quash the writ issued thereon, and for grounds of the

motion say that this court has no jurisdiction of the sub-
ject matter of the cause, that it is without jurisdiction to
issue the writ of *mandamus* prayed for in the petition, and
that the court is without power to grant the relief, or any
part thereof, prayed for in the petition.

Petitioner contends that the duty imposed by the people
upon the General Assembly to apportion the State after
each Federal census is clear and unmistakable and the pro-
visions of the constitution are mandatory in this respect.
The right which the petitioner sets up as the basis for the
relief sought is the right of representation, which by the
Declaration of Independence is said to be a right inesti-
mable to the people and formidable only to tyrants.

The writ of *mandamus* is a summary writ issuing from
a court of competent jurisdiction, commanding the officer
or body to whom it is addressed to perform some specific
duty which the relator is entitled, of right, to have per-
formed and which the party owing the duty has failed to
perform. The writ of *mandamus* issues to compel the per-
formance of a public duty by a public functionary in a
case in which the public has a right to complain of the fail-
ure to perform that particular duty. (*School Inspectors
v. People,* 20 Ill. 526.) In *Marbury* v. *Madison,* 1 Cranch,
137, (a leading case in this country on the subject of the
right of *mandamus* against the executive branch of the
government,) it is said: "Still, to render the *mandamus*
a proper remedy the officer to whom it is to be directed
must be one to whom, on legal principle, such writ may
be directed." From an inspection of the pleadings in this
case it is apparent that the duty the performance of which
is sought to be compelled is clear and unmistakable, so the
only question to be determined is whether or not, on legal
principle, the writ of *mandamus* can be issued directed to
respondents in their official capacity.

By article 3 of the Illinois constitution of 1870 the
powers of the government of this State are divided into

321—33

three distinct departments,—the legislative, executive and judicial,—and no person or collection of persons, being one of these departments, may exercise any power properly belonging to either of the others, except as expressly directed or permitted by the constitution. Neither of these three departments is subordinate to or may exercise any control over another except as is provided by the constitution. Their status is that of equality, each acting within its own sphere independent of each of the others, so long as its action does not exceed the powers confided to it, unless particular exceptions are made to this general rule by the constitution itself. (*People* v. *Bissell,* 19 Ill. 229.) The legislative department determines what the law shall be, the executive department executes or administers the law, and the judicial department construes and applies the law. Neither one of these departments can arrogate to itself any control over either one of the other departments in matters which have been solely confided by the constitution to such other department. The power to enact statutes is, clearly, solely a legislative power confided by the constitution to the legislature. The power to construe statutes is confided to the judiciary. In *Rockhold* v. *Canton Masonic Mutual Benevolent Society,* 129 Ill. 440, it is said: "The legislature cannot instruct the judiciary how to construe certain statutes, any more than the judiciary can instruct the legislature what statutes it shall enact.—*Ogden* v. *Blackledge,* 2 Cranch, 272; *Ashley's case,* 4 Pick. 23."

In *People* v. *Dunne,* 258 Ill. 441, a case involving the right of the judicial department to compel by *mandamus* a co-ordinate department of the State government to act, this court, speaking through that great jurist, Mr. Justice Cartwright, made a careful and exhaustive resume of the authorities and among other things said: "Each department of the government derives its powers from the constitution, which also prescribes the limits of such powers. It declares in article 3 that the powers of the government

of this State are divided into three distinct departments,—
the legislative, executive and judicial,—and no person or
collection of persons, being one of these departments, shall
exercise any power properly belonging to either of the
others, except as therein expressly directed or permitted,—
and substantially the same provision was contained in the
constitution of 1848.   *   *   *

"In *People* v. *Bissell,* 19 Ill. 229,   *   *   *   the question
had deliberate consideration, and the principle declared was,
that neither of the three great departments into which the
government was by the constitution divided was subordinate
to or might exercise any control over another, except as
provided in the constitution.   Illustrations were given to
show that the harmonious working of the several depart-
ments so as to accomplish one united and complete govern-
ment, required, as the constitution contemplated, that each
department should to a certain extent control and restrain
the others, such as the power of the legislative department
to make laws by which the other departments are controlled;
the qualified veto power of the executive upon legislative
action; the practical annulment of the judgments of the
judiciary by the exercise of the pardoning power, and the
power and duty of the judicial department to interpret the
laws and constitution when judicially presented for consid-
eration.   It was said that from necessity and the very nature
of all government there must be an authority somewhere
whose duty it is to determine whether the proper constitu-
tional sphere of a department has been transcended, and un-
der the constitution that duty, in most cases, fell on the judi-
cial department; that where final action upon any subject
was confided to either of the other departments, there the
responsibility must rest of conforming such action to the
law and the constitution; that the court had no power to
compel either of the other departments of the government
to perform any duty which the constitution or the law might
impose upon them, no matter how palpable such duty might

be, any more than either of those departments might compel the court to perform its duties, and that the Governor was, and must be, as independent of the court as was the legislature or as the court was of either of them. Duties imposed by the constitution of 1848 upon the legislature to pass certain laws were mentioned, but it was said that if the legislature neglected or refused to pass them, the responsibility was with the legislature alone, and no man would think of asking the courts to compel it to do so; that the court would be powerless to compel action no matter how clearly the duty might be enjoined by the constitution. * * *

"In *People* v. *O'Toole,* 164 Ill. 344, the court stated the rule as well recognized, that where a power is given to the executive by the constitution that department is supreme and independent within its prescribed duties and powers and is not subject to control or direction by any other branch of the government, and that the duty or power committed to one branch of the government for its exercise by the constitution is not subject to interference, control or dictation by another branch. * * *

"Article 3 of the constitution includes in its prohibition each of the three departments of the government, and its interpretation as to one department applies with equal force to each of the others. * * *

"The court has never attempted to exercise any compulsory power over the legislative department. The constitution enjoins upon that department the duty to enact certain laws, such as liberal homestead and exemption laws, laws necessary for the protection of operative miners, and laws to give full effect to article 13, relating to warehouses; and the court has not only never attempted to determine whether the laws enacted for those purposes were such as were necessary or proper, but if the legislature had neglected or refused to pass any such laws no one would think for a moment of asking the court to enforce the performance of the

duties so specifically enjoined upon the legislature. These are commands of the people to the legislature, but they can not be enforced by the courts.—*Gillinwater* v. *Mississippi and Atlantic Railroad Co.* 13 Ill. 1." The court held that the decisions of this court were uniform and that the judicial department had no jurisdiction to award writs of *mandamus* against a co-ordinate department of the State government, and in doing so cited, in addition to those mentioned in the above quotation, the following authorities: *Webster* v. *French,* 11 Ill. 254, *People* v. *Hatch,* 33 id. 9, *People* v. *Yates,* 40 id. 126, and *People* v. *Cullom,* 100 id. 472.

This court, from its organization to the present term, has observed with sedulous care the principles announced in the cases above cited and has consistently declined to encroach upon the powers granted by the constitution to the legislature, and has never arrogated to itself the right to pass upon the wisdom or propriety of legislative acts within such powers. The duty to re-apportion the State is a specific legislative duty imposed by the constitution solely upon the legislative department of the State, and it, alone, is responsible to the people for a failure to perform that duty.

It is contended by petitioner that even though this court may not be able to compel the legislature to re-district the State in any particular manner, the duty upon respondents to apportion the State being clear the court can by *mandamus* compel them to act in the premises. It is ordinarily the rule that an officer clothed with discretion as to the manner in which he will perform his duty, who fails to perform that duty, cannot be required to perform the duty in a particular manner, yet he may be compelled by *mandamus* to act, the court in such case simply compelling action and not the manner of action. (*People* v. *Webb,* 256 Ill. 364.) This rule, however, applies only to officers to whom, on legal principles, the writ of *mandamus* may

be directed, and as the consensus of authority in this State is to the effect that the judicial department of the State cannot compel by *mandamus* the legislative department to perform any duty imposed upon it by law, it can have no application in this case.

This court being debarred by the constitutional division of governmental functions from compelling by *mandamus* the performance of a duty by the legislative department of the State, the relief prayed for by the petitioner in this case cannot be granted, and the writ is denied.     *Writ denied.*