Jenkin Lloyd JONES, and Jenkin Lloyd
Jones, as Relator, Petitioner,

v.

Leo WINTERS, Secretary of the State Election Board of Oklahoma, Clee Fitzgerald, Chairman of the State Election Board of Oklahoma, Herbert F. Hewett, Member of the State Election Board of Oklahoma, Respondents.

No. 39857.

Supreme Court of Oklahoma.

Dec. 19, 1961.

Rehearing Denied Jan. 3, 1962.

Application for Leave to File Second Petition for Rehearing Denied Jan. 19, 1962.

Samuel A. Boorstin, Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., for respondents.

O. R. Wilhelm, member House of Representatives of the Oklahoma Legislature, amicus curiae.

JACKSON, Justice.

Jenkin Lloyd Jones, a citizen of the State of Oklahoma, brings this original action individually and as Relator, seeking a review of the apportionment of the House of Representatives as provided in 1961 by House Bill No. 1033 of the Twenty-Eighth Legislature of the State of Oklahoma, 14 Okl. St.Ann. §§ 97–101.

Petitioner prays that said House Bill No. 1033, pertaining to the apportionment of the House of Representatives be declared null and void, and contrary to the Constitution of the State of Oklahoma; that the Election Board of the State of Oklahoma be advised, instructed and enjoined against performing any clerical or ministerial act or acts in furtherance of said Act of Apportionment; that publication of any election returns conducted pursuant to said Act of Apportionment be declared void and unconstitutional; that this court render a decision that will preserve "the free and equal rights of ballot"; and that this court issue such writs as it may have the constitutional and inherent right to issue in furtherance of petitioner's constitutional rights, and that it grant such other and further relief as may be consistent with constitutional rights, as well as the general welfare of the people.

The problem, and the questions presented by petitioner, are not new in this jurisdiction. See Jones v. Freeman et al., 193 Okl. 554, 146 P.2d 564; Jones v. Cordell, Secy. et al., 197 Okl. 61, 168 P.2d 130; and Romang v. Cordell, 206 Okl. 369, 243 P.2d 677.

In Jones v. Freeman, supra, petitioner sought to test the validity of the various legislative apportionment acts enacted since the adoption of the Oklahoma Constitution. He alleged that all such apportionment acts were contrary to express constitutional provisions and sought to require the next election to be held under the apportionment as made by the Constitution. In the body of the opinion we said:

"In 1911, 1921, 1931, and 1941 the Legislature enacted statutes apportioning representation in the House of Representatives, S.L.1910–11, p. 266; S.L.1921, p. 69; S.L.1931, p. 9, 14 O.S. 1941 §§ 81–85; S.L.1941, p. 39, * * *.

"That the acts complained of do not comply with the requirements of the Constitution is plain." [193 Okl. 554, 146 P.2d 568.]

In Jones v. Freeman, we further said.

"It may be well to first point out the things that we may not do. We may not make the reapportionment ourselves, since that duty is legislative in nature, and is, by article 5, secs. 9 and 10 of the Constitution, vested in the Legislature. Such is the holding of the courts of the other states under constitutional provisions similar to ours. Parker v. State, above [133 Ind. 178, 32 N.E. 836]; Burns v. Flynn, 155 Misc. 742, 281 N.Y.S. 494, 495, affirmed 245 App.Div. 799, affirmed 268 N.Y. 601, 198 N.E. 424; Williams v. Secretary of State, 145 Mich. 447, 108 N.W. 749. Assuming that section 10(j), above, is self-executing, it does not follow that this court would have authority to revise and change the districts as fixed by the Legislature and as urged by the petitioner. While in some instances the words 'review' and 'revise' are used synonymously, we do not believe the framers of the Constitution so used the word 'review' in said provision. This court should not assume such authority, which is generally considered a legislative function, except where the language used is plain and compelling. It should not do so by a process of construction of * * * doubtful meaning. Neither may we, by mandamus or otherwise, require the Legislature to enact proper apportionment statutes. The theory of separation of the powers of government prevents our doing so. The Legislature, being a co-ordinate branch of the government, may not be compelled by the courts to perform a legislative duty,

even though the performance of that duty be required by the Constitution. 18 R.C.L. 186; Fergus v. Marks et al., 321 Ill. 510, 152 N.E. 557, 46 A.L.R. 960; Parker v. State, above. And finally we may not try title to legislative offices or enjoin the payment of legislative salaries. Fergus v. Kinney, 333 Ill. 437, 164 N.E. 665; In re Sherrill v. O'Brien, above [188 N.Y. 185, 81 N.E. 124]."

In the fifteenth paragraph of the syllabus in Jones v. Freeman, supra, we held:

"The Supreme Court will, in its discretion, refuse to issue a writ of mandamus to require elections to be held under the apportionment made by the Constitution, where to do so would result in greater inequality of representation than that provided by other laws, * * *."

In Romang v. Cordell, 206 Okl. 369, 243 P.2d 677, 679, supra, the petitioner therein challenged the constitutionality of House Bill No. 348 of the 1951 Legislature (14 O.S.1951 §§ 93–96). His prayer was that we issue a writ of mandamus directing the defendant therein, J. Wm. Cordell, Secretary of the State Election Board of Oklahoma, to refuse to accept and file notifications and declarations of candidacy for nominations and election to certain offices as members of the House of Representatives. In the body of the opinion we said:

"It is not necessary to here discuss, in detail or at length, the constitutionality of the act under consideration. It violates the provisions of Article V, section 10 of the Oklahoma Constitution in the same particulars and to approximately the same extent as the previous apportionment acts and is, therefore, subject to the same criticisms which were discussed thoroughly in the case of Jones v. Freeman, 193 Okl. 554, 146 P.2d 564, 573. * * *

"Of much more practical importance is the other proposition with which we are confronted, namely, whether or not this court has power to grant the relief sought. In its zeal to prevent another from violating the provisions of the Constitution and exercising a power not authorized thereby, the court should not overlook the fact that its authority also springs from and is limited by the provisions of that same fundamental law. In a democratic form of government, the constitution is the expression of the will of the people, the source of all governmental power and authority. Therefore, if a power is not, by the constitution, conferred upon some department or officer of the government, it remains in the people."

■ We have carefully examined the Apportionment Act of 1961 and find that it does not comply with the requirements of Art. 5, Sec. 10, Okla.Const., and is subject to most of the same criticisms that were levelled at former apportionment acts. It would serve no useful purpose to reiterate them here.

■ Having concluded that the Apportionment Act of 1961 does not comply with the requirements of the Constitution, and having heretofore held in the cited cases that prior apportionment acts do not comply with the requirements of the Constitution, our choice is between two alternatives. (1) We could enjoin the State Election Board, as prayed, from performing any clerical or ministerial acts in furtherance of the Act of Apportionment of 1961. In doing so the State Election Board would necessarily be required to follow the apportionment provided for the House by Art. 5, Secs. 11, 12, 13, and 14, Okla.Const., since we have rejected all prior apportionment acts as not complying with the requirements of the Constitution. This would result in greater inequality of representation in the House than will result from the apportionment provided for in the Apportionment Act of 1961. For instance under the apportionment as provided in the Constitution, Oklahoma County would have four representatives; Tulsa county would have one representative and would share another representative with Creek county.

Under the Apportionment Act of 1961 Oklahoma and Tulsa counties will each have seven representatives in the House. Thus it is apparent that in our effort to provide a greater equality of representation in the House for the more populous areas in the State, an injunction against the utilization of the Apportionment Act of 1961 by the State Election Board would result in far greater inequality of representation. This we have declined to do under our former decisions. (2) Our only other alternative is to decline to grant injunctive and other relief.

It has been suggested that we have a third alternative if we could hold that this court has the power to write a decision which would reapportion the House of Representatives under the Constitutional formula, based upon the federal decennial census of 1960. We have held in the cited cases that Legislative Apportionment is an exercise of legislative power which has been withheld from this court.

Art. 4, Sec. 1, Okla.Const., divides governmental power into three separate departments; the Legislative, Executive, and Judicial; and further provides that these departments shall not exercise the powers properly belonging to the other.

Art. 5, Sec. 1, Okla.Const., provides as follows:

"The *Legislative authority* of the State *shall be vested in a Legislature,* consisting of a Senate and a House of Representatives; *but the people reserve to themselves the power to propose laws and amendments to the Constitution* and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature." (emphasis supplied)

Thus Art. 5, Sec. 1, supra, specifically provides that Legislative authority is vested in the Legislature and the people; the people having reserved the power unto themselves to propose laws and amendments to

the Constitution. This reservation of legislative power in the people is not a reservation of legislative power to be exercised by the courts. In other words it tells this court that legislative powers will be exercised by the Legislature or by the people, and not by this court.

Art. 5, Sec. 10(b), and (j), as bearing upon the question under discussion, provide:

"(b) The apportionment of this State for members of the Legislature shall be made *at the first session of the Legislature after each decennial Federal census.*"

"(j) An apportionment *by* the Legislature shall be subject to review * * *." (emphasis supplied)

Thus it is quite apparent from these constitutional provisions that "Legislative Apportionment" is a legislative function to be exercised either by the Legislature or by the people, and not by the courts.

It is true that Art. 5, Sec. 10(j), further provides in material part, as follows:

"An apportionment by the Legislature shall be subject to review by the Supreme Court at the suit of any citizen, under such rules and regulations as the Legislature may prescribe. * * *"

In our former decisions we have held that an apportionment Act is subject to review by this court, but we also held that such review must be conducted "under such rules and regulations as the Legislature may prescribe." The Legislature has not provided or prescribed any rules and regulations so as to vitalize our powers of review, or by giving us the power to reapportion.

It follows that we are not authorized to make the apportionment. It also follows that the people have reserved that power unto themselves.

Under the authority of Jones v. Freeman and Romang v. Cordell, supra, this court will refuse to issue a writ of injunction to enjoin the State Election Board from per-

forming its function as reflected by the Apportionment Act of 1961, House Bill No. 1033, of the Twenty-Eighth Legislature, and require elections of State Representatives to be held under the apportionment made by the Constitution, where to do so would result in greater inequality of representation than that provided by the Act of 1961.

The application for writ of injunction and other relief is denied.

BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON and IRWIN, JJ., concur.

WILLIAMS, C. J., and HALLEY and BERRY, JJ., dissent.

BERRY, Justice (dissenting).

I am unable to agree with the majority on the proposition that no relief should be granted in this case.

Two basic issues or questions are posed. First, is House Bill No. 1033 of the last legislative session apportioning the House of Representatives unconstitutional? Second, if the Bill is unconstitutional should the respondents be prohibited from proceeding under and in accordance with the Bill?

As I read the majority opinion the question first posed above is answered in the affirmative. If such is the answer, I agree.

The population of Oklahoma as determined by the last decennial Federal census was such that under the provisions of our Constitution (Act 5, Sec. 10 et seq.) each representative district must have a population of not less than 11,641. The mentioned census shows that the population of 26 of the counties of this state was less than 11,641. Under the Act before us each of said counties is constituted a separate legislative district and as such is entitled to elect one representative. This clearly violates the Constitution.

While the majority does not directly answer the question last above posed, the question, as I read the majority opinion,

is indirectly answered by saying in substance that prohibiting respondents from proceeding under the Act in controversy would create a condition more undesirable than that which would result if respondents proceeded under a constitutional law, and it is therefore within the discretion of this court to deny relief. I am unable to agree.

I am of the opinion that it is not within the discretion of this court to deny relief where a lower tribunal over which it has superintending control will act under an unconstitutional act if not prohibited. To my way of thinking it is mandatory upon this court to prohibit respondents from proceeding under an act which is clearly unconstitutional. Sec. 42, Am.Jur. "Prohibition", Sec. 7, p. 143, and annotated notes beginning at p. 1262, 141 A.L.R.

At p. 1263 of the mentioned annotated notes, this is said:

"As stated in 77 A.L.R. 247, there has been considerable difference of opinion as to whether the granting of the writ is discretionary or demandable as a matter of right, and, as there said, the modern rule seems to be that where the court sought to be controlled clearly has no jurisdiction and there is no other remedy, a party is entitled to the writ as a matter of right. * * *"

For reasons stated, I disagree with and dissent from the majority opinion on the proposition that it is within the discretion of this court to prohibit a lower tribunal from proceeding under an unconstitutional act.

HALLEY, Justice (dissenting).

The views expressed by me in my dissent in Romang v. Cordell, 206 Okl. 369, 243 P.2d 677, hold in the case at bar. Instead of eighteen counties being given representation in excess of that allowed by the Constitution, twenty-six counties are in that category by the 1961 Act of reapportionment. We should say that the action by the Legislature is not only unconstitutional but the State Election Board

should be prohibited from receiving applications for filing for the House of Representatives from the twenty-six counties that have been given excessive voting strength. From the failure of this Court to so provide I dissent.